*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* WALTERS/ATKINS JR., Minors.

UNPUBLISHED
October 15, 2024
1:57 PM

No. 370371
Muskegon Circuit Court
Family Division
LC No. 22-004550-NA

Before: SWARTZLE, P.J., and REDFORD and FEENEY, JJ.

PER CURIAM.

The trial court terminated respondent-mother's parental rights to her three children, HW, KW, and DA. Respondent only contests the termination of her parental rights to HW. We affirm.

## I. BACKGROUND

The children lived with respondent and DA's father until they were removed in October 2022 due to concerns regarding the previous termination of respondent's parental rights to another child as well as respondent's homelessness and unemployment. Further, the children were behind on medical and dental appointments. Respondent's initial barriers to reunification also included unemployment, emotional instability and parenting skills. Respondent's substance use, including the use of methamphetamine, was later identified to be a barrier. The termination hearing was held in March 2024.

Despite being ordered to do so, respondent never completed, or provided proof of completing, a psychological evaluation or substance-abuse assessment. The Department of Health and Human Services (DHHS) referred respondent to therapy and medication management, but respondent stopped taking medication and did not follow through with therapy. Respondent also failed to obtain appropriate housing, despite referrals and assistance from the DHHS. Although respondent reported "doing odd jobs," respondent did not obtain regular employment. Between July 2023 and September 2023, respondent tested positive for THC, amphetamines, and methamphetamines; however, respondent never completed any type of substance-abuse treatment, beyond reporting at the termination trial that she had been involved in treatment for two weeks.

-1-

Children's Protective Services also received allegations in August 2023 that DA's father had sexually assaulted KW for several years and that DA had witnessed the abuse. Shortly after the allegations, respondent moved to Kentucky with DA's father, despite knowing about the allegations.

At the time of the termination hearing, HW was 16 years of age. Throughout the case, HW moved through several different placements. HW had issues with smoking marijuana and cigarettes, theft, and being suspended from school. HW admitted at one point that many of his behavioral issues related to anger at his parents. HW showed "pretty significant behavior issues during the parenting times."

Respondent only attended 52 out of 82 recorded parenting-time visits, and the DHHS had concerns about respondent's parenting skills at the visits. For example, during one visit, "the end of a pot cigarette [was] lying around," and HW picked it up before a worker from the DHHS took it away. Although respondent knew HW was in treatment for substance use, respondent openly vaped, smoked, and discussed THC paraphernalia while on Zoom with HW. KW had also reported that respondent allowed HW to smoke before the children were removed. The weekend before the termination trial, HW chose not to attend a Zoom call with respondent.

At the time of the termination hearing, HW was living at a residential facility, where he was being treated for substance use and mental health. Whitney Di Biasso, a DHHS foster-care specialist, testified that HW had expressed a desire to reunify with respondent, but that desire sometimes wavered, and that, on the day of the termination hearing, HW had expressed an interest in independent living. HW was angry with respondent, including for being in Kentucky and staying with DA's father. Di Biasso thought that HW and respondent were bonded, but that it was an unhealthy bond because respondent enabled HW's negative behaviors. Di Biasso stated that the DHHS was pursuing a permanent placement for HW, and they were not able to do so while HW's parents' rights were intact. Di Biasso also believed that, at the time of the trial, respondent had pending criminal charges, which related to breaking and entering, theft, and possession of substances.

Before the trial had begun, the lawyer-guardian ad litem (L-GAL) told the court that HW had expressed that he cared about respondent and still wanted the chance to reunify with her. The L-GAL stated that HW's feelings about respondent had gone "back and forth" and that he was of an age for his opinion to be considered, but what he wanted and what was best for him may differ. The L-GAL later argued in closing that given his age, HW's permanency goal might differ from that of his siblings, potentially including Another Planned Permanency Living Arrangement (APPLA) or a guardianship. Respondent's counsel argued that there were more avenues to permanency than adoption, and it was not true that permanency could not be achieved without termination. Other options, including APPLA or a guardianship, did not require termination. The trial court gave HW the opportunity to speak, and HW expressed that he did not want to be adopted and preferred to seek independent living.

The trial court found that there was clear and convincing evidence to terminate respondent's parental rights under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), and (j), and that termination was in HW's best interests. The trial court noted that HW had substance-abuse issues, yet respondent smoked in front of him, allowed him to smoke, and did not take his needs seriously.

The trial court acknowledged that the best-interest determination for HW was more complicated than it was for his siblings, because he was older and in a different placement, but HW had been in foster care for 515 days, and would likely still see his siblings if respondent's rights were terminated.

The trial court did not think that it was likely that HW could be returned to respondent, due to her ongoing concerns and lack of compliance. Although respondent and HW had at one point had a bond, there was also testimony that HW had recently not wanted to speak with respondent, and the court found that HW's need for permanency and stability would be best served by termination. The trial court explained that "the Prosecutor used permanency; yes, [HW] needs permanency, that can look like different things. But I think he needs some stability and finality, and I think that that can be done by terminating his mom's rights."

Respondent now appeals.

## II. ANALYSIS

Respondent argues that termination was not in HW's best interests because the trial court did not consider whether independent counsel might be necessary for HW and less-restrictive means than termination were available. After "a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). We review for clear error a trial court's determination about best interests. *In re Olive/Metts Minors*, 297 Mich App at 40. Clear error exists when we are left with a definite and firm conviction that the trial court made a mistake. *Id*. at 41.

"In general, issues that are raised, addressed, and decided by the trial court are preserved for appeal." *In re TK*, 306 Mich App 698, 703; 859 NW2d 208 (2014). The trial court addressed the question of whether termination was in HW's best interests, so that issue is preserved. Respondent did not, however, raise before the trial court whether HW should have had independent counsel or that petitioner needed to show that termination was the most narrow means of keeping HW safe. Therefore, these specific questions are reviewed for plain error affecting substantial rights. See *id*.

When making a best-interest determination, a court may consider factors including the bond between child and parent; parenting ability; the child's need for permanency, stability, and finality; and the advantages of a foster home over the parent's home. *In re Olive/Metts*, 297 Mich App at 41-42. Additional factors include a respondent's compliance with a case service plan and visitation history with the child. *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014). At the best-interest stage of the proceeding, the trial court's focus is on the child, rather than on the parent. *In re Moss*, 301 Mich App at 87.

In this case, the trial court properly considered respondent's lack of compliance with the case service plan, her lack of housing, the bond between respondent and HW, and HW's need for permanency and stability. HW had been out of respondent's care for over 500 days, and there is

no basis to find that respondent would soon be able to provide HW with stability. Accordingly, the trial court did not clearly err by finding that termination was in HW's best interests. Respondent argues, however, that because the trial court failed to appoint independent counsel to HW, HW's lack of input has left the record incomplete.

MCL 712A.17d(2) provides that, when an L-GAL determines that a child has identified interests that are inconsistent with the L-GAL's determination of the child's best interests, the LGAL "shall communicate the child's position to the court." "If the court considers the appointment appropriate considering the child's age and maturity and the nature of the inconsistency between the child's and the [L-GAL]'s identification of the child's interests, the court may appoint an attorney for the child." MCL 712A.17d(2). Generally, however, a person does "not have standing to assert constitutional or statutory rights on behalf of another person." *In re HRC*, 286 Mich App at 458. Nonetheless, for purposes of completeness, we review this claim.

The trial court gave HW the chance to share his opinion at the termination hearing, at which point he spoke about independent living. This did not significantly differ from the position of the L-GAL, who included APPLA as a potential permanency plan for HW. Further, the L-GAL explicitly informed the court that HW had, at times, expressed wanting to reunify with respondent.

Respondent has also failed to show how any error in not appointing independent counsel for HW was outcome-determinative. Even if HW had independent counsel who argued that termination was not in HW's best interests, the trial court would still have conducted the same statutory-ground and best-interest analyses, considering the record already established that, at times, HW wanted to reunify with respondent and did not want to be adopted.

Respondent has also not established that petitioner was required to show how termination was the most narrow means of achieving the state's interest in keeping HW safe from harm. Our Supreme Court has held that when a petitioner has established a statutory ground for termination by clear and convincing evidence, "the liberty interest of the parent no longer includes the right to custody and control of the children." *In re Trejo*, 462 Mich 341, 355; 612 NW2d 407 (2000), superseded in other part by statute as stated in *In re Moss*, 301 Mich App at 83. Further, at that point, "the parent's interest in the companionship, care, and custody of the child gives way to the state's interest in the child's protection." *Id*. at 356. Moreover, the trial court's best-interests explanation indicated that it specifically considered whether, and found that, termination was in HW's best interests.

Affirmed.

/s/ Brock A. Swartzle
/s/ James Robert Redford
/s/ Kathleen A. Feeney